## ROLAND McCOLLUM v. STATE.

No. A-6494. Opinion Filed Sept. 29, 1928.
(270 Pac. 341.)

Roy White for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was convicted in the county court of McIntosh county, charged with transporting intoxicating liquor, and sentenced to pay a fine of $50 and confinement in the county jail for 30 days. From the judgment and sentence, defendant has appealed to this court.

C. A. Haley testified, in substance, that he lived at Lenna, Okla.; that he knew Roland McCollum, generally known as "Bo"; that on the 21st day of February, 1926, he saw the defendant on top of Lawson Hill. He saw defendant before that time coming up the road, but he did not know who he was. He had seen the parties at John Manning's place; claimed to have seen them come out of Manning's place and get on their horses. Homer Cox was with him. He states that, when the defendant and Homer Cox rode on up the road to where he was, they got off their horses, and he made a run on his horse toward them, and he thought the defendant threw a bottle of whisky away.

Upon a direct question he said the defendant threw the whisky into the pasture. Witness stated that he found a bottle afterwards, and it contained whisky. It was a half pint bottle partly filled. This occurred in McIntosh county, on the Eufaula-Hanna highway. He was about three-quarters of a mile from John Manning's house. The first move he saw the defendant make, his hand came from his bosom, and he threw the whisky in the air, and when the whisky left his hands it went over the fence into the brush.

On cross-examination, witness admitted that there was some timber along the line from the Manning place to where he was; that the road crooked at the foot of the hill, and he could not see the parties all the time, from the time he claims they left the Manning place until they came up to the hill where he was. He hid in the woods, and defendant came up near where he was, and got down off his horse. "I could see it was a bottle, but I did not see it light. When I rode up to the defendant and Cox, I asked them what they had, and they said nothing, and defendant reared up and talked rough. I touched Bo, meaning the defendant, after he had reared around, and then got his arm and twisted it, and tore his shirt. After I went out in the woods and searched for the whisky I came back and arrested the boys, and brought the whisky to town and turned it over to the jailer. I did not see the defendant carry the whisky anywhere. I could not swear he carried it a step. I watched the defendant from the time he got off his horse until he threw the whisky away. He did not have an opportunity to pick the whisky up off the ground there without me seeing him. I know he did not get it from Cutty Cox, or pick it up off the ground." This was all the testimony on behalf of the state.

Jim Parker, a witness for defendant, stated he remembered the occasion of Charley Haley arresting Bo McCullom and Cutty Cox; that he was out on the road, and saw the parties before they were arrested; they were right on Lawson Hill; they were traveling on horseback; "I saw Haley when he came up to where we passed the boys, down at the gate 200 yards from the top of Lawson Hill; saw him when he arrested the boys; they had stopped before they were arrested. Haley, when he rode out into the section line from the woods, was over 100 to 150 yards from the boys; when he rode out, he rode fast to where the boys were. The boys' horses were between us and the boys, and between Mr. Haley and the boys. From where the boys were over to John Manning's place was between one-half and three-quarters of a mile. There is timber on each side of the road from Manning's place to the hill. The road makes a crook right at the bottom of Lawson Hill. I was traveling in a car, I judge it was 100 to 150 yards from where he came out back to the boys. I could not swear positively as to that."

Homer Cox, called as a witness for defendant, stated that he was with the defendant, and that when Mr. Haley rode out in the woods near the road he was from 100 to 150 yards from them. "Our horses were on the south side of us, and he was coming from the south. I did not see Bo McCollum have any whisky. I had been with him practically all the morning."

On cross-examination Cox stated he did not see him have any whisky at all; that the bottle of whisky mentioned by Haley did not belong to witness or to defendant, nor did they have a bottle apiece; that Bo did not throw a bottle away, and

witness did not break a bottle. Witness was then asked some questions about having been convicted for violating the prohibitory laws, and again stated that he did not break any whisky at the place where Haley arrested them, nor did Roland throw any away.

The defendant, called as a witness in his own behalf, testified that he and Homer Cox rode out the road that morning, and came out near the John Manning place, and stopped and talked to George Chisholm about some cattle. George said he had already got the cattle out of the field, and Cutty said, "Let's turn around and go back." They had gotten off their horses and Charley Haley rode up from the south. "When he rode up he said, 'What did you do with that whisky?' and I said, 'I haven't any whisky.' He then searched me and felt over my clothes. He said, 'I know you have;' he said, 'You must have thrown it away.' I said, 'I did not have any;' and he said, 'I believe you did;' he grabbed me by the arm and gave me a twist, and then started to kick me, and I told him not to kick me. He said, 'I believe I can find it myself; I believe you threw it away.' He climbed over the fence and looked around for about 20 minutes I judge, and then came back and said, 'Let's go to town;' when he came back to us he did not show us any whisky, and did not say anything about finding any whisky; the first time he said anything about finding any was when he got back to town; he put us in jail, and kept us there a short while, and turned us out."

On cross-examination, defendant stated the witness Haley did not hit him hard, but started to kick him. "I did not get rough. I told him not to kick me. We did not get off our horses at Manning's place

when we talked to George Chisholm; we were talking about first one thing and then another. I do not remember talking about cattle. Chisholm was traveling in a wagon. We did not pass George Chisholm after he was going south."

George Chisholm, called in rebuttal by the state, stated he met the defendant and Homer Cox near the home of Manning that morning; he did not have much of a conversation with them; he had been after a load of wood; that he drove on north; he stopped for about five minutes; he was just a little south of the Manning gate when he was talking with the defendant; he did not remember whether they said anything to him about cattle.

Witness Haley was recalled, and stated the first time he saw the horses they were near the Manning gate; there was no one on them at the time; that they came out and got on the horses and loped down toward the section line; and Haley admitted there were cottonwoods near the house, and up on the hill there were black jack and post oak. On cross-examination Haley did not remember having seen George Chisholm with his wagon load of wood driving along where he claims to have seen the defendant; he did not see them talking to any one near the Manning place; he saw a couple of fellows come out and get on their horses at Manning's place, but did not know how long the horses had been there.

The foregoing is in substance all the testimony that was offered. The defendant has assigned two errors alleged to have been committed, which he urges are sufficient to warrant a reversal of this case; First, that the verdict returned in this case is and was not supported by the evidence; second, because the

verdict returned by the jury in this cause is contrary to the law and the evidence.

The defendant in his argument urges there is no evidence upon which the jury could convict the defendant of unlawfully transporting liquor. The record discloses that the main witness, C. A. Haley, on cross-examination, testified positively that he could not swear that the plaintiff in error carried this whisky a step, and urges that the testimony wholly fails to show that the defendant transported any whisky from one place to another. The statement of the witness Haley tends to show that he was secreted by the roadside in the brush, when the defendant, in company with Cox, came along and stopped and got off their horses, and Haley claims that he rushed out of the brush where he was hidden, and rode down to where the defendant was, and when he started out of the brush he claims he saw the defendant throw a bottle over the pasture fence into the woods; he rode up to the defendants, and searched them, and did not find any whisky, but smelled whisky on their breath; he then went into the pasture and searched there, and claims to have found a one-half pint bottle with some whisky in it.

The defendant states that he did not have any whisky; that he did not throw any bottle over the fence into the pasture; and when the witness Haley rode up and demanded of them to know what they had, they told him they did not have any whisky, and witness stated, "I believe you have thrown it away;" that he seized the defendant by the arm and twisted the same, and struck him and started to kick him, and the defendant asked him not to do so; that witness then said to defendant, "I believe I can find the whisky." He got over the fence into the

pasture and searched around for an indefinite time—the defendant says 10 minutes—and came back out of the pasture, and took the defendant into custody, and took them into town and put them in jail. This statement of the defendant is not contradicted by the state, and the defendant stated that Haley said nothing to them about finding any whisky until after he got them to town. The bottle was not introduced in evidence before the jury. The only statement with reference to there having been any whisky is the statement of the witness Haley that he took it to town and turned it over to some party. That party to whom he claims to have turned it over was not called as a witness, and witness Jim Parker testified that he came along there and saw defendant and Cox, and that witness Haley was about 100 to 150 yards from them when he came out of the timber.

Haley claims that he saw the defendant and Cox come out of the Manning place, and get on their horses, and ride on toward him when they were at least one-half to three-quarters of a mile away, yet he cannot remember having seen George Chisholm, who was driving on the road at that time, with a wagon load of wood. No one around the Manning place was called to show that the defendant stopped or got off his horse at Manning's home. Why the state failed to call Manning, or any one around his place, to show that defendant had stopped at his place the morning witness Haley claims he saw them get on their horses, is not disclosed in the record. The testimony of the prosecuting witness is completely contradicted in many instances by disinterested parties, who testify to being on the road at the time the prosecuting witness claims he rode up to the defendant and Cox. Both the defendant and Cox contradicted the prosecuting witness as to their having

any whisky, or any bottle being thrown over into the pasture by the defendant. The prosecuting witness stands alone as to his statement, and is wholly uncorroborated in the statement made by him.

The prosecuting witness did not claim to have a warrant for the arrest of the defendant. Without authority and in violation of law he held the defendant up on the roadside, and not only searched him, but tore his clothes, twisted his wrist, struck defendant, and started to kick him. Such conduct on the part of the prosecuting witness cannot be approved by law-abiding citizens. The distance the other witnesses place the prosecuting witness from the defendant at the time he claims to have seen defendant throw something over the fence into the pasture, and in view of the fact that the horses of the defendant and Cox were between the prosecuting witness and defendant at the time, and in view of the further fact that the record discloses that, when the prosecuting witness rode up to them, and wanted to know what they had, and searched the defendant, and then claimed to the defendant that he believed he had thrown the whisky away, and in view of the further fact that the record discloses that the state witness claimed he found a half pint bottle of whisky over in the pasture, and said nothing about it to defendant or Mr. Cox until he got them to town, and then claims he turned it over to the jailer, where, so far as this record discloses, it has never been heard of, indicates his statement is not true. If he found the bottle of whisky, it should have been produced and properly identified, and its whereabouts accounted for from the date found until the trial.

This court to the fullest extent is committed to the doctrine that the credibility of the witnesses, and

the weight and value to be given to their testimony, is a question solely for the determination of the jury; yet it does not hesitate to reverse a judgment of conviction where the evidence is insufficient to support the verdict, or where the evidence in the case preponderates in favor of the defendant, or upon a careful examination thereof there remains a grave doubt of defendant's guilt. To warrant or sustain a conviction there must be competent evidence, sufficient to prove an offense was committed as charged in the information. The testimony in this case is indefinite and uncertain as to the transporting of whisky by the defendant, or the man that was with him. The prosecuting witness makes a positive statement that he could not testify that the defendant had transported the whisky a step. The distance the state witness was away when he claims the defendant threw something, and the fact that the horses were between the witness and defendant, would make it difficult for the witness to say whether or not anything was thrown, and if anything was thrown which one of the parties threw it. Isbell et al. v. State, 7 Okla. Cr. 736, 123 P. 1130.

It is the opinion of this court that there is not sufficient evidence in this case to sustain the verdict. The judgment of the lower court is therefore reversed.

DOYLE, P. J., and EDWARDS, J., concur.